UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Darius Dickerson <br><br> Plaintiff, <br><br> v. <br><br> The City of Chicago, a municipal corporation, et al. <br><br> Defendants. | Case No. 21-cv-2955 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Darius Dickerson claims that six Chicago police officers used excessive force against him during his arrest in 2018. He sues the six individual officers and their employer, the City of Chicago, under 42 U.S.C. § 1983 and state law to redress his alleged resultant injuries. The Defendant Officers and the City separately move to dismiss under Federal Rule of Civil Procedure 12(b)(6). [35]; [46]. For the reasons explained below, this Court grants the Defendant Officers' motion [35], and grants in part and denies in part the City's motion [46].

### I. Background

#### A. Factual Background

At all relevant times, Plaintiff was a twenty-seven year-old African-American man living in Chicago, Illinois. [30] ¶ 4. At all relevant times, Defendant Officers Tomas E. Almazan, Colin J. Sullivan, Jack M. Reed, Cedrick Parks, Quintin Bradley, and Scott Soreghen worked as police officers for Defendant City of Chicago. *Id.* ¶ 5.

On August 24, 2018, at approximately 10:00 p.m., the Defendant Officers arrested Plaintiff near the intersection of 132nd Street and Ellis Avenue in Chicago. *Id.* ¶ 7. During the arrest, Defendant Officers placed Plaintiff into a chokehold that restricted Plaintiff's breathing, forcefully struck Plaintiff, and placed Plaintiff face-first on the pavement. *Id.* ¶ 9. While attempting to place handcuffs on him, one of the Defendant Officers placed a knee and hand forcefully on Plaintiff's back. *Id.* Plaintiff alleges, on information and belief, that none of the Defendant Officers intervened to prevent their fellow officers from using extreme and excessive force against Plaintiff. *Id.* ¶ 10.

As a result of the incident, Plaintiff sustained injury to his chest, head, and upper body that required hospital treatment shortly after his arrest and will require future treatment. *Id.* ¶¶ 13, 15. Plaintiff also sustained injury to his spine, which has required ongoing treatment, and has caused past, present, and future pain and suffering. *Id.* ¶ 14.

### B. Plaintiff's Claims and Procedural History

On December 17, 2019, Plaintiff, then proceeding *pro se* while incarcerated, filed a case against the City of Chicago, Chicago Police Department, and "Officer John Doe Defendants" in the Circuit Court of Cook County, Illinois for excessive force. [1-1]. Plaintiff served the City on May 18, 2021, approximately a year and a half after he filed his state court complaint. [1]. Shortly after being served, on June 2, 2021, the City removed the case to this Court. [1].

On July 21, 2021, this Court issued an initial screening order. [13]. In the order, the Court dismissed the Chicago Police Department because it is not a suable entity, and it dismissed the City of Chicago because Plaintiff did not articulate a cognizable theory of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 668 (1978). [13] at 4. The Court did, however, find that Plaintiff could proceed with a constitutional claim against the unknown police officer *if* he identifies the officer by name in an amended complaint and effectuates service. *Id.* at 4. The Court also recruited counsel for Plaintiff, instructing new counsel to begin the process upon his appearance. *Id.* Specifically, the Court instructed new counsel to identify the officer, seek amendment of the complaint to name the officer, and request the issuance of summons. *Id.* The Court cautioned: "Time is generally of the essence, as many claims are subject to a two-year statute of limitations." *Id.*

After appointed counsel appeared in this case, Plaintiff issued written discovery requests to the City on October 19, 2021, aimed at discovering the identities of the officers involved in Plaintiff's arrest. [25] at 1–2. Thereafter, Plaintiff filed his first amended complaint on December 15, 2021. [30]. In his amended complaint, Plaintiff brings claims for: excessive force against all Defendants under 42 U.S.C. § 1983 (Count I); failure to intervene against all Defendants under Section 1983 (Count II); battery against the Defendant Officers (Count III); and *respondeat superior* and indemnification against the City for any tort judgment Plaintiff obtains against the Defendant Officers (Count IV). [20] ¶¶ 16–34.

The Defendant Officers and the City have moved to dismiss the entirety of the amended complaint. [35]; [46].

## II. Legal Standard

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gociman v. Loyola Univ. of Chi.*, No. 21-1304, --- F.4th ----, 2022 WL 2913751, at *7 (7th Cir. July 25, 2022); *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all reasonable inferences in the pleading party's favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586–87 (7th Cir. 2021) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

4

### III. Analysis

The Defendant Officers move to dismiss the claims against them as time-barred. [35]. The City, on the other hand, moves to dismiss on the basis that Plaintiff's amended complaint lacks sufficient facts to state a plausible *Monell* theory of liability. [46]. This Court will address each motion in order below.

#### A. Defendant Officers' Motion

##### 1. Plaintiff's Amended Complaint Does Not Relate Back

As the parties all agree, a two-year statute of limitations applies to section 1983 claims, including those based on *Monell* liability, in Illinois. *Herrera v. Cleveland*, 8 F.4th 493, 494 (7th Cir. 2021); *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021). A section 1983 claim generally accrues when the plaintiff knows or should have known that his constitutional rights have been violated. *Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31; AFL-CIO*, 942 F.3d 352, 361 (7th Cir. 2019), *cert. denied sub nom. Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31*, 141 S. Ct. 1282 (2021). On the other hand, the statute of limitations for Plaintiff's state-law battery and indemnification claims is one year. *See* 745 ILCS § 10/8-101; *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("Illinois local governmental entities and their employees . . . benefit from a one-year statute of limitations for 'civil actions' against them."); *see also Phillips v. City of Chicago*, No. 18-CV-0316, 2021 WL 1614503, at *3 (N.D. Ill. Apr. 26, 2021).

The limitations period on claims for excessive force, failure-to-intervene, and battery claims begin to run immediately at the time of injury. *See Evans v. Poskon*,

5

603 F.3d 362, 363 (7th Cir. 2010) (excessive force); *Missak v. Eagle Mkt. Makers, Inc.*, No. 14 C 1757, 2014 WL 2598802, at *3 (N.D. Ill. June 10, 2014) (battery); *Liebich v. DelGiudice*, No. 20-CV-2368, 2022 WL 874610, at *7 (N.D. Ill. Mar. 24, 2022) (noting the accrual date for failure-to-intervene claims is the same as the underlying constitutional injury). Thus, all of Plaintiff's claims accrued on August 24, 2018, the night he sustained his alleged injuries. The limitations period for Plaintiff's Section 1983 claims then ran for two years until August 24, 2020, and the period for his state-law claims ran for one year until August 24, 2019. While Plaintiff filed his original complaint against the City on December 19, 2019 (within the two-year limitations period for his constitutional claims), he did not name the Defendant Officers until he filed his amended complaint on December 15, 2021. Thus, as Plaintiff concedes, the claims against the Defendants Officers are time-barred absent an exception, such as the relation back doctrine or equitable tolling.

Plaintiff argues that his claims are timely because they relate back to the original complaint's filing date under Federal Rule of Civil Procedure 15(c)(1)(C). [40] at 6. The relation-back doctrine recognizes that "a potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." *Joseph v. Elan Motorports Techs. Racing Corp.*, 638 F.3d 555, 560 (7th Cir. 2011) (quotation omitted). Under Federal Rule of Civil Procedure 15(c)(1), relation back is proper when "the party to be brought in by amendment . . . knew or should have known that the action would have been brought

6

against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c). The Seventh Circuit has recently reaffirmed that "naming a John Doe defendant does not constitute a "mistake" within the meaning of Rule 15(c)(1)(C)(ii)." *Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1414 (2022). *Herrera* involved a plaintiff, like here, who initially "sued John Doe defendants fully aware that he lacked adequate information to ascertain" their identities. *Id.* at 498. The court of appeals reasoned that "suing a John Doe defendant is a conscious choice, not an inadvertent error" within the context of Rule 15, and therefore Rule 15 does not permit relation back where the plaintiff names defendants as "John Does." *Id.*

Based on *Herrera*, Plaintiff's failure to name the individual Defendant Officers prior to the expiration of the statutes of limitation means that the amended complaint does not relate back to the original complaint and Plaintiff's claims the Defendants Officers are untimely. *See, e.g.*, *Love v. Dart*, No. 19 C 2762, 2022 WL 797051, at *7 (N.D. Ill. Mar. 16, 2022) (holding, under *Herrera*, that the plaintiff's failure to identify and name individual defendants until after the expiry of the statute of limitations rendered the claims against them untimely); *Hollis v. City of Chicago*, No. 21 C 1956, 2022 WL 1085205, at *2 (N.D. Ill. Apr. 11, 2022) ("Unfortunately for Hollis, Rule 15 does not provide a mechanism for tolling the statute of limitations while a plaintiff works to discover the identity of their defendant."); *Cox v. City of Chicago*, No. 20 CV 6075, 2021 WL 4523148, at *1 (N.D. Ill. Oct. 4, 2021) ("Plaintiffs' failure to name individual Chicago police officers before the § 1983 statute of limitations expired

7

means that they cannot amend the complaint to name those officers, and their amended complaint does not relate back to the original.").

### 2. Equitable Tolling is Inapplicable

Plaintiff next argues that, even if his amended complaint does not relate back to his original complaint, the Court may equitably toll the statute of limitations because he exercised diligence in pursuing his claims. [40] at 10–12.

The doctrine of equitable tolling "pauses the running of, or 'tolls' a statute of limitations when a litigant has pursued his rights diligent but some extraordinary circumstance prevents him from bringing a timely action." *Xanthopoulos v. U.S. Dep't of Lab.*, 991 F.3d 823, 831 (7th Cir. 2021) (quoting *Madison v. U.S. Dep't of Lab.*, 924 F.3d 941, 946–47 (7th Cir. 2019)). Plaintiff bears the burden to show both diligence and extraordinary circumstances. *Herrera*, 8 F.4th at 499. Equitable tolling is "rare," *id.*, and courts extend such relief only "sparingly," *Xanthopoulos*, 991 F.3d at 831 (quotation omitted). This is not a case that warrants such "rare" relief.

Plaintiff did not act with reasonable diligence. When a *pro se* incarcerated plaintiff seeks to "identify unknown defendants," reasonable diligence exists if the plaintiff "filed a motion that would help him identify those defendants, and the statute of limitations expires while the motion is pending." *Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014). Similarly, reasonable diligence exists if an incarcerated *pro se* plaintiff "files a motion that directly affects his ability to file a claim." *Id.* Plaintiff took neither of these actions while the statute of limitations ran on his claims. When Plaintiff filed his lawsuit in state court on December 19, 2019,

8

he had over eight months remaining to identify the proper individual Defendants for his state-law claims, and over twenty months to identify Defendants for his Section 1983 claims. Instead of seeking to ascertain their identities, Plaintiff waited approximately a year and a half after filing his case to serve the City of Chicago. If he had acted more diligently in serving the City, Plaintiff could have conducted "early discovery to learn the identity of the individual officers," because courts routinely allow plaintiffs to sue an official or an institution for the "sole purpose of allowing a plaintiff to conduct early discovery to learn the identity of John Doe Defendants." *Terry v. Chi. Police Dep't*, 200 F. Supp. 3d 719, 727 (N.D. Ill. 2016). Alternatively, before filing his complaint in state court, Plaintiff could have "used the pre-suit discovery tools available pursuant to Illinois Supreme Court Rule 224, which allows pre-suit discovery to determine the identity of a defendant." *Id.* at 728; *see Dent v. Constellation NewEnergy, Inc.*, --- N.E.3d ----, 2022 IL 126795, ¶ 23 ("Rule 224 provides a means to identify potential defendants prior to the commencement of a lawsuit.").

Plaintiff contends that he made "diligent" efforts to identify individual officers, submitting Freedom of Information Act (FOIA) requests to the Chicago Police Department in 2019 and 2021 while he was incarcerated. [40] at 10. Plaintiff says that he "only received a response a year after the statute of limitations had expired" on his Section 1983 claims. *Id.* at 11. Putting aside the fact that his 2021 FOIA request came after the statutes of limitations had already expired, Plaintiff's attempt to use the FOIA process does not demonstrate reasonable diligence. FOIA's "purpose

is to ensure an informed citizenry, not to serve as a discovery tool" for plaintiffs. *Terry*, 200 F. Supp. 3d at 727 (quoting *Hawkins v. Drug Enf't Admin.*, 347 F. App'x 223, 224 (7th Cir. 2009)). Plaintiff thus "should not have relied predominantly on a FOIA request to obtain information as to the names of officers involved in his arrest," but rather "should have taken additional action to identify the offending officers." *Id.* at 728. Diligence "entails a more active pursuit of legal rights." *Hollis v. City of Chicago*, No. 21 C 1956, 2022 WL 1085205, at *3 (N.D. Ill. Apr. 11, 2022).

Further, as the Defendant Officers point out, Plaintiff should have at least known the identity of Officer Reed by September 13, 2018, because Reed testified at Plaintiff's preliminary hearing for the State's criminal prosecution of Plaintiff arising from the arrest at issue in this case. *See* [35-6]. Plaintiff was present for this preliminary hearing. *Id.* at 15–16. At the hearing, Reed also identified his partners at the time of the arrest as Officer Sullivan and Officer "Amazon." *Id.* at 5. The Court can take judicial notice of these facts from the state court record. *Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020), *cert. denied sub nom. Spiegal v. Kim*, 141 S. Ct. 369 (2020). Thus, Plaintiff knew or should have known the identities of three of the officers by September 13, 2018, well before he filed his complaint in 2019. Plaintiff's conduct cannot be deemed reasonably diligent under these circumstances.

Nor does Plaintiff demonstrate that extraordinary circumstances stood in his way of timely identifying the Defendant Officers. Incarceration alone "does not qualify as an extraordinary circumstance." *Brimage v. Fowler*, No. 15 C 4970, 2020 WL 5979605, at *4 (N.D. Ill. Oct. 8, 2020) (quoting *Socha v. Boughton*, 763 F.3d 674,

10

685 (7th Cir. 2014)). Instead, extraordinary barriers might include "legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Dandridge v. Cook County*, No. 12-CV-5458, 2013 WL 3421834, at *9 (N.D. Ill. July 8, 2013). But Plaintiff does not show that any of these circumstances existed; in fact, he does not identify any extraordinary circumstances. *See* [40] at 10–11.

For these reasons, this Court concludes that Plaintiff has not met his burden to demonstrate that this case merits equitable tolling. Because Plaintiff's claims against the Defendant Officers are time-barred, this Court dismisses those Defendants from this case. Moreover, because Plaintiff's claim against the City in Count IV for *respondeat superior* and indemnification depends on the viability of Plaintiff's underlying battery claim, *Douglas v. Village of Palatine*, No. 17 CV 6207, 2020 WL 1469439, at *10 (N.D. Ill. Mar. 26, 2020), the dismissal of the Defendant Officers necessarily also results in the dismissal of Count IV against the City.

### B. The City's Motion to Dismiss

The Court moves next to the City's motion to dismiss, which argues that Plaintiff fails to plead sufficient facts to state a plausible *Monell* theory of liability.[1]

A *Monell* claim requires Plaintiff to plead: (1) he has suffered the deprivation of a constitutional right; and (2) an official custom or policy of defendant caused that

---

[1] The City has not argued that the dismissal of the claims against Defendant Officers also necessarily forecloses Plaintiff's *Monell* claim against the City. There is no dispute that Plaintiff timely sued the City. The Seventh Circuit has also suggested that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010); *see also Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) (cautioning that "district courts cannot prevent plaintiffs from

11

deprivation. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Three types of actions can support *Monell* liability: (1) an express policy; (2) a widespread practice that is so well-settled that it constitutes a custom or practice; or (3) a final policymaker caused the constitutional injury. *Id.* While *Monell* claims are not subject to a heightened pleading standard, *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), plaintiffs must plead "factual content that allows the court to draw the reasonable inference" that the municipality maintained a policy or custom causing the alleged constitutional injury, *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011).

The City argues that Plaintiff's *Monell* allegations are too conclusory to state a viable Section 1983 claim. *See generally* [46]; [52]. This Court agrees in part. Plaintiff's amended complaint suggests three theories of *Monell* liability: (1) failure to train; (2) failure to adequately punish; and (3) the endorsement of a "code of silence" through which officers are empowered to use excessive force without recrimination. [20] ¶¶ 19, 26.

Starting with the failure to train theory, Plaintiff alleges only that "Defendant City and its Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference." *Id.* ¶¶ 19, 26. This allegation "does not rise above conclusory allegations that a failure to train officers caused the violation

---

pursuing potentially viable *Monell* claims that seek additional equitable relief or are distinct from the claims against individual defendants").

12

of her rights." *Taylor v. Norway*, No. 20-CV-7001, 2021 WL 4133549, at *3 (N.D. Ill. Sept. 10, 2021). A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In the context of pleading sufficiency, that means that the "required level of factual specificity rises" with the complexity of the claim. *McCauley*, 671 F.3d at 616–17. Because Plaintiff's allegations here do not rise above the level of boilerplate conclusions, this Court dismisses his failure to train theory. *See, e.g.*, *Fix v. City of Chicago*, No. 21-CV-2843, 2022 WL 93503, at *4 (N.D. Ill. Jan. 10, 2022) (granting motion to dismiss failure to train theory because the allegations against the City were "cursory, at best"); *Milan v. Schulz*, No. 21-CV-00765, 2022 WL 1804157, at *6 (N.D. Ill. June 2, 2022) (dismissing failure to train theory because the plaintiff "does not define or otherwise specify what 'adequate training' the City failed to provide, nor does he plead facts linking that failure to his injuries").

In contrast, Plaintiff's "code of silence" and "failure to punish" theories, while also somewhat conclusory, are sufficiently plausible to proceed. Plaintiff alleges that the City and its police department facilitate excessive force by "failing to adequately punish and discipline prior instances of similar misconduct," causing the police officers "to believe their actions will never be scrutinized"; and that official policymakers condone a "code of silence" where officers fail to report each other's misconduct. [30] ¶¶ 19, 26. While "these allegations bare some resemblance to boilerplate, they have sufficient factual content to make Plaintiffs' claim plausible." *Turner v. M.B. Fin. Bank*, No. 14-CV-9880, 2017 WL 4390367, at *9 (N.D. Ill. Oct. 3,

13

2017) (finding allegations that the City fails to adequately punish past instances of excessive force sufficiently alleged *Monell* liability). Indeed, allegations that the "City refuses to discipline officers for engaging in misconduct and that police officers operate under a code of silence, in combination, allow for a plausible inference that these practices emboldened Defendant officers" to use unconstitutionally excessive force against Plaintiff. *Maglaya v. Kumiga*, No. 14-CV-3619, 2015 WL 4624884, at *5 (N.D. Ill. Aug. 3, 2015).

In light of the above, Plaintiff may proceed with his *Monell* claims against the City in Counts I and II, but only on his "code of silence" and "failure to discipline" theories.

### IV. Conclusion

For the reasons explained above, this Court grants the Defendant Officers' motion to dismiss [35] and dismisses Defendants Tomas E. Almazan, Colin J. Sullivan, Jack M. Reed, Cedrick Parks, Quintin Bradley, and Scott Soreghen from this case. This Court grants in part and denies the City's motion to dismiss [46]. Plaintiff's *respondeat superior* and indemnification claim against the City in Count IV is dismissed, and Plaintiff's failure to train theory is dismissed. The City's motion is otherwise denied. The Court sets a telephonic status for August 30, 2022 at 9:30 A.M., for the remaining parties. Parties shall dial 866-434-5269; access code 3751971.

Dated: August 16, 2022

E N T E R:

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge
Final:

Dated: August 16, 2022

E N T E R:

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge